# ASPETUCK VALLEY COUNTRY CLUB, INC. *v.* TOWN OF WESTON
## (SC 18105)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

818

Argued January 13—officially released August 4, 2009

*Michael P. Shea*, with whom were *Joseph L. Hammer* and, on the brief, *Thomas D. Goldberg*, for the appellant (plaintiff).

*Jonathan S. Bowman*, with whom was *Barbara M. Schellenberg*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. This appeal arises from the decision of the tax assessor of the defendant, the town of Weston, denying the application of the plaintiff, Aspetuck Valley Country Club, Inc., for classification of certain of its golf course property as open space land pursuant to General Statutes § 12-107e.[1] The plaintiff appeals[2] from the judgment of the trial court granting

[1] General Statutes § 12-107e provides in relevant part: "(a) The planning commission of any municipality in preparing a plan of conservation and development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land, provided such designation is approved by a majority vote of the legislative body of such municipality. Land included in any area so designated upon such plan as finally adopted may be classified as open space land for purposes of property taxation or payments in lieu thereof if there has been no change in the use of such area which has adversely affected its essential character as an area of open space land between the date of the adoption of such plan and the date of such classification.

"(b) An owner of land included in any area designated as open space land upon any plan as finally adopted may apply for its classification as open space land on any grand list of a municipality by filing a written application for such classification with the assessor thereof not earlier than thirty days before or later than thirty days after the assessment date . . . . The assessor shall determine whether there has been any change in the area designated as an area of open space land upon the plan of development which adversely affects its essential character as an area of open space land and, if the assessor determines that there has been no such change, said assessor shall classify such land as open space land and include it as such on the grand list. . . .

"(c) Failure to file an application for classification of land as open space land within the time limit prescribed in subsection (b) of this section and in the manner and form prescribed in said subsection (b) shall be considered a waiver of the right to such classification on such assessment list. . . ."

Section 12-107e was amended since the relevant time period in the present case. See Public Acts 2005, No. 05-190, § 5. Those changes, technical in nature, are not relevant to the present appeal. Accordingly, references herein to § 12-107e are to the current revision.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the defendant's motion for summary judgment and denying the plaintiff's cross motion for summary judgment. The issues in this appeal are whether the trial court improperly: (1) determined that, because the open space designation of the plaintiff's property in the defendant's plan of conservation and development had never been approved by a majority vote of the town's legislative body, the property was therefore ineligible for open space classification for tax assessment purposes pursuant to § 12-107e (a) and (b); and (2) deprived the plaintiff of its vested right to an open space classification for tax assessment purposes under § 12-107e (b). We conclude that the trial court properly determined that the plaintiff's property was ineligible for open space classification and that the plaintiff did not have a vested right to open space classification. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history that are relevant to our resolution of this appeal. The plaintiff owns nearly 110 acres of land in Weston and for approximately forty years has used 100 acres of that land as a private golf course. In the 1969, 1987 and 2000 Weston town plans of conservation and development (plan of development),[3] each of which was adopted pursuant to General Statutes § 8-23,[4] the plaintiff's golf course was labeled a "[p]rivate recreational area of open character." In September, 2004, for the first time, the plaintiff applied to the defendant for open space classification for tax assessment purposes pursuant to § 12-107e (a) and (b).[5] Such a classifi-

---

[3] Such a plan of development is required to be prepared by each municipality's planning commission pursuant to General Statutes § 8-23.

[4] General Statutes § 8-23 (g) (1) provides: "After completion of the public hearing [pursuant to subsection (f) of this statute], the commission may revise the plan and may adopt the plan or any part thereof or amendment thereto by a single resolution or may, by successive resolutions, adopt parts of the plan and amendments thereto."

[5] See footnote 1 of this opinion.

cation would entitle the plaintiff to a reduction in the assessed value of its property and a corresponding reduction in taxes. In January, 2005, the defendant's tax assessor denied the plaintiff's application because the defendant's legislative body had not approved by a majority vote the open space designation of the plaintiff's property in the plan of development. The plaintiff then appealed from that decision to the trial court.

The defendant filed a motion for summary judgment, claiming that, because there was no genuine issue of material fact as to whether the defendant's legislative body had approved the designation of the plaintiff's land by a majority vote, the defendant was entitled to judgment as a matter of law. In response, the plaintiff filed a memorandum of opposition to the defendant's motion for summary judgment as well as a cross motion for summary judgment. The plaintiff contended that the designation of its property as an open space recreation area on the 1969 plan of development showed that the property continuously had been recognized as open space land even before the majority legislative approval requirement of § 12-107e (a) was imposed in 1979. See Public Acts 1979, No. 79-513, § 3 (P.A. 79-513). The plaintiff claimed that because § 12-107e (a) should not be applied retroactively, the defendant should be directed to classify the plaintiff's property as open space land for tax assessment purposes.

The trial court concluded that the plan of development was merely advisory and not binding on the defendant. The trial court thus determined that the plaintiff had no vested right to open space classification for tax assessment purposes. Furthermore, the trial court concluded that § 12-107e (a) clearly and unambiguously requires that a municipality's legislative body approve by a majority vote any open space designation. Accordingly, because the trial court found that this vote never

had occurred,[6] it granted the defendant's motion for summary judgment and denied the plaintiff's cross motion for summary judgment, and rendered judgment for the defendant. This appeal followed.

We begin by setting forth the appropriate standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008); see also *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

The plaintiff's claims challenging the trial court's interpretation of § 12-107e are also subject to plenary review. See, e.g., *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 42, 950 A.2d 1270 (2008); *Considine* v. *Waterbury*, 279 Conn. 830, 836, 905 A.2d 70 (2006). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the

[6] The defendant's first selectman, who is the presiding selectman for the defendant's legislative body, the board of selectmen, attested in an affidavit that no such vote had occurred. No affidavit or other evidence contradicting that representation was offered.

legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z[7] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Stiffler* v. *Continental Ins. Co.*, supra, 43. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 271 Conn. 284, 287 n.3, 856 A.2d 408 (2004).

I

The plaintiff first claims that the trial court improperly determined that its property was not eligible for open space classification for tax assessment purposes under § 12-107e because the property's open space designation was never approved by a majority vote of the defendant's legislative body. Specifically, the plaintiff

---

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

asserts that § 12-107e does not require the open space designation of its property within the plan of development to be approved by a majority vote of the defendant's legislative body in order to receive open space classification for tax assessment purposes. Instead, the plaintiff contends that § 12-107e (b) provides that a tax assessor *must* classify property as open space for tax assessment purposes if there has been no change in the use of the property that adversely affects its character as open space as designated in *any* plan of development.

In response, the defendant claims that the trial court properly concluded that § 12-107e plainly and unambiguously requires that a municipality's legislative body must approve an open space designation by a majority vote before a taxpayer may apply for an open space classification for tax assessment purposes. The defendant asserts that, because the defendant's legislative body never approved the open space designation of the plaintiff's property, it is therefore precluded under the statute from being classified as open space land for tax assessment purposes. Although we conclude that § 12-107e is not plain and unambiguous with regard to the present issue, we nevertheless agree with the defendant that the trial court properly determined that a majority vote of a municipality's legislative body is necessary before a taxpayer may apply for open space classification.

We begin our analysis pursuant to § 1-2z with the text of § 12-107e. See footnote 1 of this opinion. As we do so, we are mindful that "terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Lutters*, 270 Conn. 198, 206, 853 A.2d 434 (2004). Subsections (a) and (b) of § 12-107e address the two consecutive procedures for the classification of land as open space for tax assessment purposes: (1)

subsection (a) concerns the procedure and effect of open space designation by the planning commission; and (2) subsection (b) provides the procedure by which a landowner may apply for open space classification for tax assessment purposes once its land has been designated as open space in the plan of development.

Section 12-107e (a) provides that "[t]he planning commission of any municipality in preparing a plan of conservation and development for such municipality may designate upon such plan areas which it *recommends* for preservation as areas of open space land" and that such an open space designation is required to be "approved by a majority vote of the legislative body of such municipality." (Emphasis added.) The statute further provides that land "*so designated* upon such plan *as finally adopted* may be classified as open space land for purposes of property taxation . . . ." (Emphasis added.) General Statutes § 12-107e (a).

Section 12-107e (b), on the other hand, provides that a landowner whose property has been "designated as open space land upon any plan *as finally adopted*" may apply for classification of that land as open space for tax assessment purposes. (Emphasis added.) That subsection establishes a very limited time frame within which this application may be submitted. Landowners may not apply for open space classification "earlier than thirty days before or later than thirty days after the [tax] assessment date . . . ." General Statutes § 12-107e (b).

Notably, subsection (a) of § 12-107e provides that open space classification for tax assessment purposes may occur only after property has been designated as open space land and approved by a majority of the municipality's legislative body. Subsection (b), on the other hand, merely provides that the landowner of "*any* area designated as open space land upon any plan as

finally adopted" may apply for open space classification. (Emphasis added.) General Statutes § 12-107e (b). It is not clear from the text of the statute itself whether the majority legislative approval requirement of subsection (a) of § 12-107e also applies to subsection (b). Specifically, the statute does not explain its use of the term "as finally adopted," which is used in both subsections (a) and (b) of § 12-107e, but after different qualifications. While § 12-107e (a) clearly provides that open space designation must be "approved" and town plans of development must be "finally adopted" in order to be eligible for open space classification for tax assessment purposes, § 12-107e (b) omits any reference to the majority legislative approval requirement of subsection (a) and mentions only the requirement that the town plan of development containing the designation be "finally adopted . . . ." See General Statutes § 12-107e (a) and (b). The statute therefore fails to clarify whether a "finally adopted" plan of development for the purposes of a landowner's application for open space classification under § 12-107e (b) includes an open space designation that has been approved by a legislative majority. In other words, it is not clear whether the majority legislative approval requirement from § 12-107e (a) is incorporated into the language of § 12-107e (b).

The plaintiff, in an attempt to clarify the statutory language, highlights the fact that subsection (a) refers to land "so designated"; General Statutes § 12-107e (a); but subsection (b) refers to "*any* area designated" as open space land. (Emphasis added.) General Statutes § 12-107e (b). Specifically, the plaintiff points out that while subsection (a) of § 12-107e was amended in 1979 to include the majority legislative approval requirement; see P.A. 79-513, §3; subsection (b) remained untouched by the amendment and thus incorporates no such requirement. The plaintiff therefore asserts that the ref-

erence in § 12-107e (b) to the open space designation of land in "any plan as finally adopted" requires only that the designation be upon *any* plan finally adopted pursuant to § 8-23, and not necessarily also approved by a majority of the municipality's legislative body. In response, the defendant claims that it would be unreasonable for the legislature to have added the requirement for legislative approval to § 12-107e (a) in 1979 but not have intended to make the requirement applicable to applications for open space classification under § 12-107e (b). Because § 12-107e (a) and (b) use the same language—that is, the phrase "as finally adopted"—even without the words "so designated," the defendant contends that subsection (b) also requires majority legislative approval before open space classification for tax assessment purposes may occur. Because we find that the text of § 12-107e is susceptible to both parties' reasonable interpretation, we conclude that it fails to yield a plain and unambiguous meaning. See, e.g., *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 12, 961 A.2d 373 (2009) ("[b]ecause both readings of the statute are reasonable, we conclude that the statutory language is ambiguous in this case"); *State* v. *Jenkins*, 288 Conn. 610, 620–21, 954 A.2d 806 (2008) (concluding that phrase is ambiguous because it is susceptible of more than one reasonable interpretation). Accordingly, we are not limited to the text of § 12-107e and we may look to extratextual sources for guidance as to the legislature's intent. See *Tarnowsky* v. *Socci*, supra, 271 Conn. 287 n.3.

The statute's legislative history provides assistance in determining its meaning. See, e.g., *State* v. *Orr*, 291 Conn. 642, 651, 969 A.2d 750 (2009) ("[w]hen a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment" [internal quotation marks omitted]). In 1979, § 12-107e (a) was amended

by the addition of the language, "provided such designation is approved by a majority vote of the legislative body of such municipality." P.A. 79-513, § 3. Before 1979, no such language, and thus no such majority approval requirement, existed.[8] Senator Audrey Beck, a proponent of the legislation in the Senate and cochair of the subcommittee on business taxation of the finance, revenue and bonding committee, explained that "[t]he purpose of the bill is to require the legislative body of a municipality to approve any designation by the planning commission of that municipality's land in the municipality as open space land *for property tax purposes* . . . ." (Emphasis added.) 22 S. Proc., Pt. 15, 1979 Sess., p. 5064. Senator Beck's explanation explicitly links the requirement of municipal legislative approval to open space classification "for property tax purposes . . . ." Id. In other words, contrary to the plaintiff's claim, Senator Beck's explanation indicates that the legislature intended its 1979 amendment to apply equally to both subsections (a) and (b) of § 12-107e.

In addition to Senator Beck's statement, the proposed committee bill that ultimately was enacted as P.A. 79-513 contained the following statement of purpose: "To require that the legislative body of a municipality approve the classification of land as open space land for property tax purposes." Proposed House Bill No. 7246. Again, as in Senator Beck's remarks before the Senate, legislative approval is tied not just to open space classification, but also to actual property tax purposes. Thus, the legislative history of § 12-107e is clear that the legislature intended that property designated as open

---

[8] As the defendant concedes in its brief, if the plaintiff had filed an application for open space classification for purposes of property tax assessment before 1979, its application would have been approved because no requirement that the open space designation of its property be approved by a majority of the defendant's legislative body existed at that time.

space land in a municipality's plan of development be approved by a majority of the municipality's legislative body before it may be classified as open space land for tax assessment purposes.

This conclusion is consistent with principles of statutory construction. We are mindful that "statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law. See, e.g., *Doe* v. *Doe*, 244 Conn. 403, 428, 710 A.2d 1297 (1998) (we read related statutes to form a consistent, rational whole, rather than to create irrational distinctions); *In re Valerie D.*, 223 Conn. 492, 524, 613 A.2d 748 (1992) ([s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law)." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002). Moreover, "[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended. *Norwich Land Co.* v. *Public Utilities Commission*, 170 Conn. 1, 4, 363 A.2d 1386 (1975); see *Sutton* v. *Lopes*, 201 Conn. 115, 121, 513 A.2d 139 (observing that we must construe statute in manner that will not thwart its intended purpose or lead to absurd results), cert. denied sub nom. *McCarthy* v. *Lopes*, 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986). . . . [W]e [also] must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck* v. *Jacquemin*, 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991)." (Internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 803–804, 955 A.2d 15 (2008).

Indeed, it would make no sense to require legislative approval of a property's open space designation in an advisory plan of development pursuant to § 12-107e (a), but not require the same legislative approval for applications for open space classification based on that designation for tax assessment purposes pursuant to § 12-107e (b). Such a result would be irrational and would directly contradict not only Senator Beck's explanation of the intent behind the 1979 amendment to § 12-107e; see 22 S. Proc., supra, p. 5064; but also the underlying bill's clear statement of purpose. The legislature cannot have intended such an unreasonable result.

Furthermore, the more reasonable interpretation of §12-107e—that is, that the legislative approval requirement apply to both subsections (a) and (b)—is consistent with this court's long recognition of the distinction between open space designation and open space classification under § 12-107e (a) and (b). "[I]t is apparent that the initial 'designation' of areas of open space land by a local planning commission is to be distinguished from the 'classification' of such land by the town assessor." *Birchwood Country Club, Inc.* v. *Board of Tax Review*, 178 Conn. 295, 299, 422 A.2d 304 (1979); see also *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008) ("use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" [internal quotation marks omitted]). On the one hand, open space designation pursuant to § 12-107e occurs within a municipality's plan of development, which is merely advisory and contains only recommendations for land use. See, e.g., General Statutes § 8-23 (d) (1) ("[a town's] plan of conservation and development shall . . . [D] *recommend* the most desirable use of land within the municipality for residential,

recreational, commercial, industrial, conservation and other purposes and include a map showing such proposed land uses" [emphasis added]); *AvalonBay Communities, Inc.* v. *Orange,* 256 Conn. 557, 574–75, 775 A.2d 284 (2001) (it is well established that " 'a town plan is merely advisory' "); *Lathrop* v. *Planning & Zoning Commission,* 164 Conn. 215, 223, 319 A.2d 376 (1973) (same); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 10:15, pp. 321–22 ("contents of the plan of conservation and development are only advisory to the zoning commission"). On the other hand, open space classification for tax assessment purposes is more than a mere recommendation for land use; it is a status that leads to a lower tax assessment. See General Statutes § 12-107a (2)[9] (mandating lower tax rate for property classified as open space land). This distinction between designation and classification indicates that open space designation alone is not enough to make land eligible for open space classification pursuant to § 12-107e (b). Indeed, if mere open space designation were enough, not only would there have been no need for the legislature's 1979 amendment to § 12-107e, but there also would have been no need for the legislature to use the different terms, "designation" and "classification," within the same statute. See *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission,* supra, 850. Something more than mere open space designation is needed.

We recently recognized the additional requirement of approval of a majority of the municipality's legislative

[9] General Statutes § 12-107a provides in relevant part: "It is hereby declared . . . (2) that it is in the public interest to prevent the forced conversion of farm land, forest land, open space land and maritime heritage land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farm land, forest land, open space land and maritime heritage land . . . ."

body. In *Griswold Airport, Inc.* v. *Madison,* 289 Conn. 723, 732, 961 A.2d 338 (2008), we noted that approval of the open space designation by a majority of the town's legislative body is necessary for property to be classified as open space land for tax assessment purposes. "Once a planning commission designates an area that it recommends should be preserved as open space *and the designation receives legislative approval,* land included within that area may be classified as open space land for purposes of property taxation . . . ." (Emphasis added; internal quotation marks omitted.) Id. It is thus apparent that "[i]f the open space plan [in the plan of development] is approved by a majority vote of the municipality's legislative body, areas shown on the plan for open space land can receive an open space tax classification . . . ." 9 R. Fuller, supra, p. 321.

On the basis of the foregoing textual and extratextual analysis of § 12-107e, we conclude that under § 12-107e, property designated as open space land requires majority legislative approval before the land is eligible for open space classification for tax assessment purposes. In the present case, the plaintiff's property was designated as open space land in the 1969 plan of development, and was recognized as the same in the 1987 and 2000 plans of development. The open space designation, however, has never been approved by a majority of the defendant's legislative body.[10] We therefore conclude that the mere designation of the plaintiff's property as open space land in the plan of development does *not* make the plaintiff's property eligible for open space classification for tax assessment purposes pursuant to § 12-107e (b), and, accordingly, that the trial court properly determined that the plaintiff's property was ineligible for open space classification because its open space designation never had been approved by a majority of the defendant's legislative body.

[10] See footnote 6 and accompanying text of this opinion.

## II

The plaintiff also claims that it has a vested right to obtain open space classification of its property and that the trial court improperly deprived it of this vested right by rendering judgment for the defendant. Specifically, the plaintiff asserts that the defendant's continuous recognition of the plaintiff's property as open space land since its designation as such in the 1969 plan of development created a vested right to obtain open space classification for tax assessment purposes. The plaintiff also maintains that the trial court's application of P.A. 79-513, which amended § 12-107e (a) to create the majority vote requirement, constitutes an improper retroactive application of a statutory amendment.

In response, the defendant contends that the plaintiff has no vested right to open space classification because the open space designation in the 1969 plan of development constitutes only a recommendation and not a definite fixed right. Additionally, the defendant claims that the principle of retroactivity does not apply to the plaintiff's case because the plaintiff waited until 2004 to file its application for open space classification for tax assessment purposes. The defendant asserts that the plaintiff's reliance on a 1969 plan of development that has been twice superseded by more recent town plans of development, most recently in 2000, renders the plaintiff's argument meritless. We agree with the defendant.

As previously set forth herein, it is well established that a municipality's plan of development is merely advisory and not binding. See, e.g., *AvalonBay Communities, Inc. v. Orange*, supra, 256 Conn. 574–75 (noting that it is well established that " 'a town plan is merely advisory' "); *Lathrop v. Planning & Zoning Commission*, supra, 164 Conn. 223 (same); 9 R. Fuller, supra, pp. 321–22 ("contents of the plan of conservation and

development are only advisory to the zoning commission"). It is also well established that "[a] vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co., Inc.*, 263 Conn. 358, 375, 819 A.2d 822 (2003); *Toise* v. *Rowe*, 243 Conn. 623, 631, 707 A.2d 25 (1998); *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 13, 940 A.2d 892, cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008). "A right is not vested unless it amounts to something more than a mere expectation of future benefit or interest founded upon an anticipated continuance of the existing general laws." (Internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, 98 Conn. App. 213, 233, 907 A.2d 1235 (2006), cert. denied, 281 Conn. 904, 916 A.2d 44 (2007).

Accordingly, because a town's plan of development is merely advisory in nature, it is clear that a designation of property as open space land within that plan of development is also merely advisory and cannot be considered more than a "mere expectation of [a] future benefit . . . ." (Internal quotation marks omitted.) Id. Such a designation does *not*, therefore, create a vested right, as the plaintiff claims.

Moreover, to the extent that there might be a vested right to open space classification for tax assessment purposes, the statute itself limits the time within which a landowner may exercise that right. Section 12-107e (c) is clear that, since 1979,[11] the failure to file an application for open space classification for tax assessment

---

[11] The legislature amended § 12-107e in 1979 to include the provisos in both subsections (a) and (b). P.A. 79-513, § 3. This amendment took effect July 1, 1979. P.A. 79-513, § 6.

purposes within the time limit imposed by subsection (b) constitutes "a waiver of the right to such classification . . . ." General Statutes § 12-107e (c). Subsection (b) limits the application period for open space classification for tax assessment purposes to a specific sixty day window: "not earlier than thirty days before or later than thirty days after the assessment date . . . ." General Statutes § 12-107e (b). Accordingly, there cannot be any right to open space classification for tax assessment purposes unless a landowner applies for such classification within that sixty day period. In the present case, the plaintiff concedes that it did not file an application for open space classification until 2004, despite the designation of its property as open space land in the 1969 plan of development. Moreover, the designation of the plaintiff's property as open space land in the 1969 plan of development never had been approved by a majority of the defendant's legislative body. Lacking such approval, the plaintiff's 2004 application for open space classification based on its 1969 open space designation is necessarily beyond the sixty day time limit imposed by § 12-107e (b). The plaintiff has thus waived, pursuant to the time limitation in § 12-107e (b) and (c), any vested right it may have had to open space classification for tax assessment purposes.

Accordingly, because open space designation alone does not create a vested right to open space classification for tax assessment purposes, and because the plaintiff's application for open space classification was necessarily beyond the time limit imposed by § 12-107e (b), we conclude that the trial court did not improperly deprive the plaintiff of a vested right to open space classification for tax assessment purposes.

The judgment is affirmed.

In this opinion the other justices concurred.