# LI LI *v.* CANBERRA INDUSTRIES ET AL.
## (AC 32744)

Gruendel, Beach and Flynn, Js.

Argued October 25, 2011—officially released March 27, 2012

*Li Li*, pro se, the appellant (plaintiff).

*T. Christopher Donnelly*, pro hac vice, with whom was *James C. Graham*, and, on the brief, *Jeffrey M. Ernst*, pro hac vice, and *Daniel J. Klau*, for the appellees (defendants).

*Opinion*

BEACH, J. The self-represented plaintiff, Li Li, appeals from the summary judgment rendered by the trial court in favor of the defendants, Canberra Industries, Packard BioScience (Packard), Perkin-Elmer Life Sciences, Darren Lee, Roberta Tyska (formerly Roberta Kuhn), Mark Schmeizl, Wayne Richardson, Eugene Della Vecchia, Richard McKernan and Emery G. Olcott. On appeal, the plaintiff claims that the court erred in granting summary judgment in favor of the defendants as to her common-law and statutory claims of wrongful discharge.[1] We agree and reverse in part the judgment of the trial court.

In this action, which arises from the plaintiff's employment with and subsequent termination from Packard,[2] the following undisputed facts are relevant. At various times, the plaintiff's supervisors reviewed her work performance. While he was the plaintiff's supervisor, Mike Wasyl wrote three written performance reviews. On September 1, 1997, he rated the plaintiff as "meets requirements" in all categories and recommended her acceptance as a regular employee. In his reviews on April 1, 1998, and April 1, 1999, he

---

[1] The plaintiff also argues that the court improperly granted the defendants' motion for summary judgment as to the remaining nine counts of the complaint. Having examined the record and the briefs and having considered the arguments of the parties, we are persuaded that the court properly granted the defendants' motion for summary judgment as to the remaining counts and that further discussion is not merited.

[2] Packard was the parent company of Canberra Industries and Packard Instrument Company. In 2001, Perkin-Elmer Life Sciences purchased Packard.

rated the plaintiff overall as "meets requirements," but rated her as "needs improvement" in some categories.

The plaintiff worked with her next supervisor, Lee, until December, 1999. In a written performance review dated April 26, 2000, Lee assigned the plaintiff an overall rating of "unacceptable," and stated that the plaintiff "came into my group complaining." Although "her attitude improved as did the quality of her work," her improvement faded within months and "[s]he became argumentative . . . the quality of her work decline[d]. . . [and] [i]t was decided it was best for the company if we moved her to a position on [another] product line . . . ."

The plaintiff's next supervisor, Richardson, sent her a review of her performance via e-mail on February 29, 2000, after having supervised her for two and one-half months. Richardson rated the plaintiff poorly and commented that "[i]f improvement doesn't happen, other disciplinary action may be taken up to and including termination." The review also stated that the plaintiff was being transferred to a position under the supervision of Schmeizl, who would establish goals for her and review her performance after ninety days. The plaintiff was placed on probation for a period of ninety days.

In March, 2000, Schmeizl directed the plaintiff to telephone competitors to obtain certain information while she pretended to be someone else. The plaintiff informed Schmeizl of her assessment that the practice was illegal. On March 27, 2000, Schmeizl sent an e-mail to Kris Keegan, a lawyer in Packard's legal department, inquiring whether it was legal to telephone competitors' customer support lines or their sales representatives while pretending to be "Dr. Smith from State University" in order to obtain "pricing information," "literature" and "quotations." Keegan advised against such practice.

On March 30, 2000, having supervised the plaintiff for thirty days, Schmeizl sent the plaintiff an e-mail reviewing her performance. He noted "serious concerns" regarding missed deadlines and noted that "[i]n light of the needs improvement review you received from [Richardson] before joining my group, it will be important that I see significant improvements over the next sixty days." He outlined various tasks for her to perform, and recorded the date each task was assigned, due and completed. Sixty days after the plaintiff was assigned to his group, Schmeizl, on May 1, 2000, sent the plaintiff a second e-mail regarding her work performance, stating that he had tried to be lenient regarding her requests for time off, "but when the time off is combined with substandard work I must become more strict regarding your hours." He added "take your work seriously. . . I would very much like to give you a good review at the end of May." Schmeizl's ninety day review on May 31, 2000, rated the plaintiff's work performance overall as "unacceptable." He commented that the plaintiff was "unfriendly with co-workers, has not completed certain assignments, and . . . refused to take an assignment I gave her." Schmeizl recommended termination of her employment. On June 1, 2000, the plaintiff's employment with Packard was terminated.

The plaintiff filed an eleven count revised complaint in January, 2009,[3] which alleged common-law wrongful discharge (count one), breach of implied contract (count two), breach of express contract (count three), fraudulent misrepresentation (count four), negligent supervision (count five), statutory wrongful discharge (count six), hostile work environment (count seven), defamation (counts eight and nine), intentional infliction of emotional distress (count ten) and negligent infliction of emotional distress (count eleven).

[3] The action was commenced years earlier.

On April 1, 2009, the defendants moved for summary judgment as to all counts of the complaint. The motion was accompanied by a memorandum of law and sixty exhibits. On August 11, 2009, the plaintiff filed a motion in opposition to summary judgment, which was accompanied by more than forty exhibits. On July 23, 2010, the court issued a memorandum of decision granting the defendants' motion as to all counts. This appeal followed.

Our standard of review for summary judgment is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Aspetuck Valley Country Club, Inc.* v. *Weston,* 292 Conn. 817, 822, 975 A.2d 1241 (2009).

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence

of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Citation omitted; internal quotation marks omitted.) *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, 68 Conn. App. 556, 559, 791 A.2d 719 (2002).

I

The plaintiff claims that the court erred in granting summary judgment as to her common-law claim of wrongful discharge. We agree.

She framed her action in the following manner. In count one of her revised complaint, the plaintiff alleged, inter alia, that the defendants discharged her under the pretext of poor performance reviews when, in fact, the discharge was retaliatory for her "whistle-blowing." Regarding this count, the plaintiff alleged the following facts. In March, 2000, when her supervisor, Schmeizl, wanted her to call competitor companies pretending to be a customer to obtain information, she refused to do so, stated such act was illegal and suggested that Schmeizl contact the legal department. Schmeizl did so and on March 27, 2000, he received an e-mail from the legal department advising him to refrain from such practices. Schmeizl, nonetheless, continued to direct the plaintiff to call competitors in the manner at issue and commented negatively in a thirty day performance review on March 30, 2000, regarding her failure to call competitor customer support lines.

"Generally, contracts of permanent employment, or for an indefinite term, are terminable at will. . . . In *Sheets* [v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980)], however, the court also recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy. . . . To prevail on [a] claim under the *Sheets* exception, the plaintiff has the burden of pleading and proving that his dismissal occurred for a reason violating public policy. . . . [E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." (Citations omitted; internal quotation marks omitted.) *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, supra, 68 Conn. App. 559–60.

Statutory actions for wrongful discharge typically follow the analytic route outlined in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this analysis, the plaintiff has a minimal burden of establishing a prima facie case by showing that he or she engaged in a protected activity or otherwise fell within the protection of the statute, that he or she was subsequently discharged, and that there was a causal connection between the two. If a prima facie showing is made, the burden of going forward shifts to the employer to demonstrate a permissible reason for the termination of employment. If the employer's burden of going forward is satisfied, the plaintiff has the ultimate burden of proving by the preponderance of the evidence that the employer's reason is pretextual or, even if true, the improper reason likely motivated the employer in the decision to terminate. See *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400–

401, 880 A.2d 151 (2005); *Arnone* v. *Enfield,* 79 Conn.
App. 501, 507, 831 A.2d 260, cert. denied, 266 Conn. 932,
837 A.2d 804 (2003).

A common-law action brought pursuant to *Sheets*
includes a causation element. See *Sophia* v. *Danbury,*
116 Conn. App. 68, 74–75, 974 A.2d 804 (2009). A com-
mon-law case logically should be analyzed in the same
framework as a statutory cause of action. The court in
this case explicitly decided only the third step, that is,
the actual reason or reasons for termination. A failure
to prove causation defeats the action in any event, so
that the court did not decide whether the plaintiff had
engaged in activity protected by public policy.

The plaintiff attached exhibits to her motion in oppo-
sition.[4] Richardson's negative review was written in
February, 2000. The plaintiff questioned the legality of
certain practices in March, 2000. Lee's April 26, 2000
negative review, Schmeizl's two negative reviews on
March 30, 2000, and May 1, 2000, and Schmeizl's May
31, 2000 ninety day review recommending termination,
all occurred within several months of the plaintiff's
remonstrance.

More specifically, in Schmeizl's March 30, 2000
review, he directed the plaintiff, inter alia, to "[c]all
competitors' customer support lines and gather pricing
information and literature." The review noted that the
task first had been assigned on March 1, 2000, and was
to have been completed on March 10, 2000. The review
also said that the first calls were placed on March 23,
2000, but that the literature had not been collected. In
the plaintiff's deposition, she stated that "the only way"

---

[4] Our extensive review of the file reveals that there may be some question
as to whether the plaintiff's materials submitted in opposition to summary
judgment were properly authenticated. Because the trial court appears to
have considered all the materials, however, and no challenge appears to
have been made, we likewise will consider the substance of the materials pre-
sented.

to get information regarding competitors, at least within the time frame set forth by Schmeizl in his thirty day review, was to telephone them pretending to be "Dr. Smith from XYZ University." She stated that after she informed Schmeizl of her view that such practice was unlawful, she telephoned competitors, but identified herself as a Packard employee. The competitors refused to give information to her and she informed Schmeizl that unless she pretended to be another person she could not obtain information from competitors. She stated that, despite this, Schmeizl expected her to continue to telephone competitors pretending to be someone else, which practice is common within the industry. She further stated that Schmeizl was "punishing" her for not making the telephone calls in the manner directed. In Schmeizl's ninety day review, in which he recommended termination, he stated, inter alia, the plaintiff "refused to take an assignment I gave to her. [The plaintiff] leaves me no choice but to recommend her immediate termination."

The plaintiff claims that a genuine issue of material fact existed as to the cause of her termination of employment. She appears to argue that the court erred in concluding that the only genuine reason for her termination was poor performance. In the documents submitted in response to the defendant's motion for summary judgment, the plaintiff submitted materials that raised a genuine factual issue regarding the reason for her discharge. A fact finder may consider the temporal proximity between the plaintiff's complaint to Schmeizl and her discharge. See *Gordon* v. *New York City Board of Education*, 232 F.3d 111, 117 (2d Cir. 2000) (causation is proven by showing that protected activity was temporally close or "followed closely by . . . evidence of retaliatory animus directed against the plaintiff by the defendant"); see also *Espinal* v. *Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (period of only six months between

protected activity and retaliation sufficient to support inference of causation). Termination within several months of the time the allegedly protected activity[5] occurred may be sufficient to create an inference of causation. Although there surely was evidence of perfectly permissible reasons for the plaintiff's discharge as well, a genuine issue of fact nonetheless existed. We therefore conclude that the court erred in granting the defendants' motion for summary judgment as to count one.[6]

## II

In count six of her revised complaint, the plaintiff claims that her employment was terminated because, inter alia, she exercised her constitutional right to free speech by criticizing her coworkers and supervisors for improper and illegal activities within the company. She claims her discharge was accomplished in violation of General Statutes § 31-51q.

Section 31-51q provides in relevant part: "Any employer . . . who subjects any employee to . . . discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such . . . discharge. . . ."

Our Supreme Court has stated: "As a statutory matter, a statute that protects constitutional rights in the workplace should not be construed so as to transform every

---

[5] As noted previously, the court did not discuss whether the activity implicated a public policy sufficient to trigger a *Sheets* claim. It is inappropriate for us to do so.

[6] We express no opinion as to the existence of a material fact as to any other element of wrongful discharge.

dispute about working conditions into a constitutional question. The legislature made its intention in that respect clear by stating expressly, in § 31-51q, that the statute provides a cause of action only against discharge for expressions of opinion that do not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer . . . . The statute applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen." (Internal quotation marks omitted.) *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 17, 738 A.2d 623 (1999). "[W]hether the subject matter addressed by a particular statement is of public concern involves a question of law for the court. . . . [W]hether a particular statement addresses such a matter depends on its content, its form, and the context in which it is made. This later inquiry necessarily involves a question of fact." *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 777, 734 A.2d 112 (1999).

The plaintiff seems to argue that the court erred in granting the defendants' motion for summary judgment as to count six because a genuine issue of material fact exists as to the cause of her termination. In granting the defendants' motion for summary judgment as to count six, the court reasoned that no genuine issue of material fact existed as to the reason for the plaintiff's discharge and that the plaintiff's "unsupported factual assertions are insufficient to demonstrate that she was discharged on any other basis, including her criticisms of her coworkers and her supervisors." The court determined that the plaintiff was unable to state a cause of action under § 31-51q because "she is unable to prove the causal connection between her exercise of her free speech right and her discharge."

Our analysis regarding causation as to count six is identical to the analysis in part I of this opinion. The

plaintiff created a genuine issue of material fact as to the cause of her discharge.[7] For this reason, we conclude that the court erred in granting the defendants' motion for summary judgment as to count six.[8]

The judgment is reversed only as to counts one and six of the revised complaint alleging wrongful discharge and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[7] We express no opinion as to whether the plaintiff's claim satisfies other elements of a claim pursuant to § 31-51q, but note only that the court's conclusion that no genuine issue of material fact exists as to the cause of her termination is erroneous.

[8] In its consideration of counts one and six, the court did not expressly consider any element other than causation.