******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., dissenting. I disagree with the majority's conclusion that in order for a defendant to be convicted of conspiracy in violation of General Statutes § 53a-48 (a), the state is required to prove that the defendant specifically intended that every element of the conspired offense be accomplished, even an element that itself carries no specific intent requirement. Instead, I conclude that pursuant to the plain language of § 53a-48 (a), the only specific intent required for the crime of conspiracy is an intent "that conduct constituting a crime be performed . . . ." I would therefore conclude that the Appellate Court improperly reversed the judgment of conviction of the defendant, Terrell Williams Pond.

Moreover, I agree with the observation of Judge Borden, concurring in the decision of the Appellate Court, that our recent decisions have created an anomaly in our criminal law that is unlikely to have been intended by the legislature. Specifically, according to the majority in the present case, pursuant to our decision in *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005), our law requires that the state "prove a greater mens rea for an *inchoate crime*—conspiracy—than for the *completed crime* itself." (Emphasis in original.) *State* v. *Pond*, 138 Conn. App. 228, 247, 50 A.3d 950 (2012) (*Borden, J.*, concurring). I further agree with Judge Borden that it is the role of this court to correct that anomaly. The majority's decision, by contrast, perpetuates it. Accordingly, I respectfully dissent.

I first explain why the plain language of the statute controls. Section 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." Pursuant to the plain language of § 53a-48 (a), the only intent required in order to commit the crime of conspiracy is the "intent that conduct constituting a crime be performed . . . ." Our decisions have characterized conspiracy as a specific intent crime. See, e.g., *State* v. *Padua*, supra, 273 Conn. 167. We have explained the distinction between specific intent and general intent thusly: "When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general intent for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent." (Internal quo-

tation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 572, 949 A.2d 1092 (2008).

Specific intent, then, is "an intent to bring about a certain result." Id. The plain language of § 53a-48 (a) expressly identifies the "certain result" that must be intended in order for participants to be convicted of conspiracy—they must enter into the agreement with the specific intent "that conduct constituting a crime be performed . . . ." General Statutes § 53a-48 (a). The specific intent identified in § 53a-48 is a broad one. All that the conspirators need to intend is that conduct constituting a crime be performed. For example, actors who enter into an agreement with the intent that a robbery be performed are participants in a conspiracy. The mere fact that one of the conspirators may subsequently, without the knowledge of the coconspirators, engage in conduct that constitutes an aggravating factor, such as displaying or threatening the use of what he represents to be a deadly weapon or dangerous instrument; see General Statutes § 53a-135 (a); does not change the fact that the conspirators entered into the agreement with the requisite specific intent to perform a robbery. As support for its position that the state is required to prove that a defendant specifically intended that all of the elements of the predicate offense be committed, the majority relies on this court's statement in *State* v. *Beccia*, 199 Conn. 1, 3–4, 505 A.2d 683 (1986), that "[c]onspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they *intended to commit the elements of the offense*." (Emphasis in original; internal quotation marks omitted.) In the present case, that reliance is erroneous. In *State* v. *Beccia*, supra, 1, this court was not focused on the question of whether § 53a-48 (a) required the state to prove that the defendant held a specific intent with respect to each element of the predicate offense. Rather, in that case, the issue before the court was whether conspiracy would lie when one of the elements of the purported predicate offense required a specific intent of *recklessness*. Id., 5. We answered that question in the negative. Id. Thus, the principle relied on in *Beccia* is that participants cannot agree to "accomplish an unintended result [i.e., recklessness]." Id. Accordingly, the language in the decision focused on the requirement that conspirators must intend, when they enter into the agreement, to engage in conduct that constitutes a crime.

The plain meaning of § 53a-48 (a) further explains why, by contrast, additional language was necessary to clarify the requisite mental state for the offense of criminal attempt, General Statutes § 53a-49. Because

§ 53a-48 (a) expressly identifies the specific intent required for conspiracy as merely the intent that a crime be performed, it was not necessary for the legislature to include language in § 53a-48 (a) that tethered the mental state required for conspiracy to that required for the predicate offense. In § 53a-49, however, because the definition of criminal attempt does not expressly identify a requisite specific intent, it was logical for the legislature to identify the requisite mens rea for that offense as being the same mental state as required for the predicate offense.

The majority's reliance on accessory liability, as defined in General Statutes § 53a-8, is misplaced because that statute is fundamentally different from either conspiracy or criminal attempt, because it is not a separate offense from the substantive crime. We have explained: "There is . . . no such crime as 'being an accessory.' . . . '[T]he accessory statute merely provides alternate means by which a substantive crime may be committed.' " (Citations omitted.) *State* v. *Foster*, 202 Conn. 520, 528, 522 A.2d 277 (1987). Section 53a-8, accordingly, simply reaffirms that because one may commit the same crime either as a principal or as an accessory, the same mens rea is required regardless of the means by which the defendant is criminally liable.

Despite the express language setting forth the requisite specific intent for conspiracy, the majority concludes that the statutory language is ambiguous. The task, therefore, that the majority must accomplish, based on that conclusion, is to discern the intent of the legislature. The majority correctly states that "New York law is particularly instructive [in discerning legislative intent with respect to our state's Penal Code]. See Commission to Revise the Criminal Statutes, [Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-48 (West 2012)] comment, p. 10 (language of Connecticut conspiracy statute is based on revised New York Penal Law); see also *State* v. *Havican*, 213 Conn. 593, 601, 569 A.2d 1089 (1990) (because drafters of Connecticut Penal Code relied heavily on New York Penal Law, Connecticut courts look to New York law for guidance in interpreting ambiguous criminal statutes)." (Internal quotation marks omitted.) After acknowledging this principle of statutory construction, however, the majority improperly relies on *People* v. *Joyce*, 100 App. Div. 2d 343, 474 N.Y.S.2d 337, appeal denied, 62 N.Y.2d 807 (1984), a decision of the Appellate Division of New York.

The majority claims that *Joyce* is "squarely on point with respect to the present case." It is not. *Joyce* construed § 105.10 of the New York Penal Law, which provides in relevant part: "A person is guilty of conspiracy in the fourth degree when, with intent that conduct constituting . . . a class B or class C felony be performed, he [or she] agrees with one or more persons to engage in or cause the performance of such conduct

. . . ." The court in *Joyce* concluded that § 105.10 required the state to prove that the defendant had the specific intent that a participant would display a purported weapon in order to be convicted of conspiracy to commit burglary in the second degree. *People* v. *Joyce*, supra, 100 App. Div. 2d 347. The majority in the present case relies on that construction of § 105.10 of the New York Penal Law to support its construction of § 53a-48 (a).

The source statute for § 53a-48 (a), however, was not § 105.10, but instead was § 105.00 of the New York Penal Law, which contains almost identical language to § 53a-48 (a). Section 105.00 of the New York Penal Law provides: "A person is guilty of conspiracy in the sixth degree when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." With respect to the more general provision of § 105.00, the court in *Joyce* noted that it may be appropriate to state "that one who joins a conspiracy after its inception, knowing of its central criminal design, may be held accountable for the actions and declarations of his coconspirators which occurred before his entry into the conspiracy . . . ." (Citations omitted.) *People* v. *Joyce*, supra, 100 App. Div. 2d 347. *Joyce*, accordingly, extends criminal liability further than the state is seeking in the present case, contemplating that a defendant may be held liable for actions undertaken by coconspirators even before the defendant entered the conspiracy. Id. I therefore read *Joyce* to favor my interpretation of § 53a-48 (a).

By its interpretation of § 53a-48 (a), the majority grafts an additional element on to the crime of conspiracy. It is well settled that in order to establish the crime of conspiracy in Connecticut, the state must prove the three elements of conspiracy: (1) that there was an agreement between two or more persons (2) to engage in criminal conduct, and (3) that the agreement was followed by an overt act in furtherance of the conspiracy. *State* v. *Allan*, 311 Conn. 1, 12, 83 A.3d 326 (2014). The majority's interpretation of § 53a-48 (a), however, adds the requirement that the state must prove that conspirators had the specific intent to commit every element of the predicate offense, even when the predicate offense does not require such specific intent, thus adding the additional element to the crime of conspiracy.

This additional requirement is inconsistent with our precedent stating that it is not necessary for the state to prove the existence of a formal or express agreement between the conspirators. *State* v. *Millan*, 290 Conn. 816, 826, 966 A.2d 699 (2009). We have recognized, in fact, that "[a] conspiracy can be formed . . . in a very short time period . . . ." (Internal quotation marks omitted.) Id. Additionally, circumstantial evidence is

sufficient to prove that there was an agreement because "[i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose." (Internal quotation marks omitted.) *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991). "[T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy . . . may be inferred from the activities of the accused persons." (Internal quotation marks omitted.) *State* v. *Bova*, 240 Conn. 210, 245–46, 690 A.2d 1370 (1997).

As an illustration of how inconsistent the majority's interpretation is with our existing law on conspiracy, consider the following hypothetical. Consider a scenario in which, during the course of the attempted robbery of the victim, the other participant displayed, instead of a carbon dioxide pistol, a gun that was capable of being discharged. Under those facts, the state would have charged the defendant with conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-134 (a).[1] Under the majority's holding today, the state would be required to prove that the defendant agreed that the other participant would display a gun *that could be discharged.* That level of specificity of agreement is not consistent with our cases stating that the state is not required to prove the existence of a formal agreement, and that the conspiracy may be inferred from conduct and circumstantial evidence.[2] After today's decision, the state will be required to prove a formal agreement as to the elements of the predicate offense. Rarely will coconspirators sign papers, shake hands or utter the words, "I agree to X and Y, but not Z." See *State* v. *Millan*, supra, 290 Conn. 826 ("[c]onspiracy can seldom be proved by direct evidence" [internal quotation marks omitted]).

I observe, further, that the new element that the majority now requires the state to prove is also at odds with our criminal jury instructions, which have long provided that "it is not essential that [a defendant] know the complete plan of the conspiracy in all of its details. It is enough if [the defendant] knows that a conspiracy exists or that [he] is creating one and that [he] is joining with at least one person in an agreement to commit a crime." Connecticut Criminal Jury Instructions § 3.3-1 (4th Ed. 2011), available at http://jud.ct.gov/ji/criminal/part3/3.3-1.htm (last visited January 20, 2015). Those instructions also provide that "[i]n order to convict a person of conspiracy, the state need not show that such person had direct communication with all other conspirators. It is not necessary that each conspirator be acquainted with all others or even know their names." Id. The rule that the majority announces today effectively requires the state to prove the existence of a formal agreement, and also now requires that the

state prove that the defendant *did* know all the details of the conspiracy, despite the fact that our courts have long delivered the opposite instruction.

The primary policy reason that the majority offers in support of its conclusion that the legislature is not likely to have intended that a defendant be held liable for the subsequent actions of a coconspirator is the concern that persons not be held liable for the actions of others unless they have agreed to those actions. As the majority explains, "[u]nder the state's reading of the statute, an individual who plans a simple, unarmed robbery nevertheless can be convicted of the more serious crime of conspiracy to commit robbery in the first or second degree if weapons are ultimately used without his knowledge or consent." Subsection (b) of § 53a-48, however, specifically provides: "It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." If a defendant does not agree to the use of a weapon during a robbery, the defendant has the option to engage in conduct manifesting his renunciation of his criminal purpose.

As Judge Borden observed in his concurring opinion in the Appellate Court, it is unlikely that the legislature intended to require the state to prove a greater mens rea for the inchoate crime of conspiracy than it is required to prove for the completed crime. *State* v. *Pond*, supra, 138 Conn. App. 247. Both the nature of conspiracy as an inchoate crime, as well as the penalty that the legislature deemed appropriate for the crime of conspiracy, support the conclusion that the legislature views the crime of conspiracy as at most equal in severity to the completed offense. This court previously has defined the term "inchoate" to mean "imperfect; partial; unfinished; begun, but not completed." (Internal quotation marks omitted.) *State* v. *Trent*, 182 Conn. 595, 600, 438 A.2d 796 (1981). Inherent in that definition is that an inchoate crime is predicated on, but in some respects lesser than, the completed offense. And the punishment for conspiracy is equal to, not greater than, the punishment for the completed offense. That is, the crime of conspiracy is of the same grade and degree as is the object of the conspiracy. General Statutes § 53a-51. If the penalty for the two crimes is the same, and if the crime of conspiracy is an "incomplete" version of the predicate offense, it is not rational to require the state to bear a higher burden of proof for the crime of conspiracy.

As Judge Borden explained, "[o]ur statutes are to be read, where possible, with common sense; see *State* v. *Courchesne*, 296 Conn. 622, 710, 998 A.2d 1 (2010); and as forming a coherent, rational whole, rather than as forming an anomalous, inconsistent scheme. See *Aspet-*

*uck Valley Country Club, Inc.* v. *Weston*, 292 Conn. 817, 829, 975 A.2d 1241 (2009) (we read related statutes to form a consistent, rational whole, rather than to create irrational distinctions . . .). That principle is particularly appropriate for interpretation of the Penal Code, which was enacted to rationalize our state's former patchwork quilt of criminal laws." (Internal quotation marks omitted.) *State* v. *Pond*, supra, 138 Conn. App. 246 (*Borden, J.*, concurring). Put briefly, the majority's interpretation of § 53a-48 (a) does not adhere to these principles of statutory construction.

Finally, the majority devotes a significant amount of time to discussing other theories of criminal liability that the state can or should have relied on in the present case, such as criminal attempt, accessory liability, and liability pursuant to *Pinkerton* v. *United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). First, I observe that the fact that the state may have other means, both statutory and at common law, by which it may obtain a conviction is irrelevant to the task before the court in this appeal, which is limited to the statutory construction of § 53a-48 (a). Second, I note that the majority's discussion of alternative theories on which the state could rely indirectly demonstrates yet another weakness in the majority's interpretation—it has construed § 53a-48 (a) to require a specificity of intent so high that it is reasonable to question why the state would *ever* from this point on rely on § 53a-48 (a). The majority's interpretation of the statute effectively removes conspiracy as a viable tool from the state's arsenal, thus nullifying the legislature's intent to punish the crime of conspiracy.

For the foregoing reasons, I respectfully dissent.

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[2] The majority states that its new rule does not require the state to prove the existence of a formal agreement in order to sustain its burden to prove conspiracy, and suggests that because the state may prove the existence of the agreement as to each and every element of the offense by circumstantial evidence, the nature of the agreement that the state will be required to prove is not a formal one. The type of evidence, whether direct or circumstantial, by which the state may prove the existence of the agreement does not change the fact that the majority's rule now requires the state to prove a very specific and highly detailed agreement, known to all participants in the conspiracy, without explaining the abandonment of our well established rules concerning what constitutes an agreement to commit a crime. Indeed, if the agreement envisioned by the majority does not constitute a formal agreement, it is entirely unclear what the majority would consider to constitute a formal agreement.