******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LANA ROSSOVA *v.* CHARTER COMMUNICATIONS, LLC
## (AC 43153)

Alexander, Clark and Palmer, Js.

*Syllabus*

The plaintiff sought to recover damages for the alleged wrongful termination of her employment by the defendant, which she claimed was the result of pregnancy discrimination in violation of the Connecticut Fair Employment Practices Act (§ 46a-51 et seq.). The defendant hired the plaintiff to work in its brand and creative strategy department. S, the only other employee in the department, was her supervisor. According to the plaintiff, the two had a good working relationship through the end of her first month of employment, when the plaintiff informed S that she was pregnant. Thereafter, the relationship deteriorated. According to the plaintiff, S no longer invited her to collaborate on projects, became curt and unfriendly, and began to micromanage and criticize her work. S also started to document the plaintiff's alleged performance deficiencies. Less than five weeks after the plaintiff disclosed her pregnancy, S informed the plaintiff that her employment was being terminated for her poor performance. Following a trial to the jury, the jury returned a verdict in favor of the plaintiff on the issue of liability. Thereafter, the trial court denied the defendant's motion for judgment notwithstanding the verdict and awarded the plaintiff economic damages in addition to prejudgment interest, postjudgment interest, and attorney's fees. On appeal to this court, the defendant challenged only one element of the plaintiff's prima facie case, namely, whether she established that the termination of her employment occurred under circumstances that gave rise to an inference of discrimination. *Held*:

1. The trial court properly denied the defendant's motion for judgment notwithstanding the verdict:

a. The plaintiff satisfied her initial burden of establishing a prima facie case of discrimination: there was sufficient evidence in the record from which a rational fact finder could have inferred that the termination of the plaintiff's employment was motivated by discriminatory bias based on her pregnancy, including evidence of the change in the working environment and in the relationship between the plaintiff and S following the plaintiff's disclosure of her pregnancy.

b. There was sufficient evidence from which the jury reasonably could have found that the defendant's stated reason for the termination of the plaintiff's employment was pretextual and that the defendant intentionally discriminated against the plaintiff on the basis of her pregnancy: evidence in the record supported the plaintiff's claims of a drastic change in the work environment and the working relationship between the plaintiff and S following the plaintiff's disclosure of her pregnancy and there was a lack of documentary evidence of the plaintiff's allegedly defective performance prior to her disclosure, with the exception of a single e-mail, which the jury reasonably could have determined was of little to no consequence when juxtaposed against the considerable evidence supporting the plaintiff's contention that her disclosure marked a dramatic shift in work environment; moreover, pursuant to the United States Supreme Court's holding in *Reeves* v. *Sanderson Plumbing Products, Inc.* (530 U.S. 133), the jury was permitted to infer the ultimate fact of intentional discrimination on the basis of the inferences reasonably drawn from the evidence establishing the plaintiff's prima facie case and rebutting the defendant's nondiscriminatory explanation for the termination of the plaintiff's employment; furthermore, contrary to the defendant's assertion, the plaintiff did not rely solely on evidence of the temporal proximity of the disclosure of her pregnancy to her dismissal to establish her claim, as other evidence, even though not overwhelming, was sufficient when viewed in the light most favorable to sustaining the verdict for the jury to have inferred that the defendant's nondiscriminatory reason was pretextual and that the termination of the plaintiff's employment was actually motivated by intentional discrimina-

tion.

2. The trial court's assessment of the plaintiff's damages was not clearly erroneous: the trial court determined that the defendant proved that the plaintiff had failed to mitigate her damages for only seventeen of the fifty-two months that she was unemployed on the basis of all of the evidence before it and, contrary to the defendant's claim, did not rely solely on documentary evidence or the lack thereof; moreover, the burden was on the defendant to prove that suitable work existed and that the plaintiff did not exercise reasonable diligence to obtain employment, and the trial court found that the testimony of the defendant's expert regarding such matters was entitled to little weight.

Argued November 10, 2021—officially released April 12, 2022

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the jury before *Povodator, J.*; verdict for the plaintiff; thereafter, the court, *Povodator, J.*, denied the defendant's motion for judgment notwithstanding the verdict; subsequently, the court, *Hon. Kenneth B. Povodator*, judge trial referee, rendered judgment in accordance with the verdict and awarded the plaintiff compensatory damages, prejudgment and postjudgment interest and attorney's fees, from which the defendant appealed to this court. *Affirmed.*

*Proloy K. Das*, with whom were *Patricia E. Reilly* and *Lorey Rives Leddy*, for the appellant (defendant).

*John M. Walsh, Jr.*, for the appellee (plaintiff).

*Opinion*

CLARK, J. The defendant, Charter Communications, LLC, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Lana Rossova. The plaintiff brought this action alleging pregnancy discrimination in violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., after the defendant terminated her employment.[1] On appeal, the defendant claims that the court (1) improperly denied its motion for judgment notwithstanding the verdict because the plaintiff failed to establish a prima facie case of pregnancy discrimination and that the defendant's reason for terminating her employment was a pretext for discrimination against her on the basis of her pregnancy and (2) miscalculated the plaintiff's damages. We disagree with the defendant's claims and, accordingly, affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. In February, 2013, the defendant hired the plaintiff as a senior manager of digital marketing at its Stamford location. Per the defendant's policy, all new employees must successfully complete a ninety day probationary period. The plaintiff began her employment with the defendant on March 4, 2013, and worked directly for the director of the brand and creative strategy department, Jennifer Smith. The plaintiff and Smith were the only two employees in the department. Smith hired the plaintiff to fill a newly created position with the expectation that the plaintiff would improve communications between their department and the digital marketing team and make recommendations to increase sales.

According to the plaintiff, she and Smith had a great relationship during the first few weeks of her employment and had become friends. Smith invited the plaintiff to her office to collaborate on projects and brainstorm ideas on a daily basis. They sometimes spent one half of the day working together in Smith's office and ate lunch together. On March 29, 2013, the plaintiff told Smith that she was pregnant. Smith was happy for the plaintiff and shared that, coincidentally, she was also pregnant. Smith thereafter instructed the plaintiff to speak with the human resources manager, Karina Patel, to complete paperwork to start the process of finding a substitute for the plaintiff while she was on maternity leave. When speaking with Patel, the plaintiff inquired as to whether she would be able to work from home if she experienced complications related to her pregnancy. The plaintiff previously had experienced a high-risk pregnancy, which required her to be on bed rest for more than two months, and her physician had warned that she would encounter similar complications in subsequent pregnancies. Patel informed the plaintiff

that, for liability reasons, she would not be permitted to work from home and then discussed the plaintiff's eligibility for leave.

A few days after informing Smith that she was pregnant, the relationship between the plaintiff and Smith deteriorated. Smith became less cordial than she had been prior to learning that the plaintiff was pregnant. When interacting with the plaintiff following the disclosure, Smith was curt and unfriendly. Although Smith still met with the plaintiff, she no longer invited the plaintiff into her office to brainstorm or collaborate on projects. According to the plaintiff, Smith never expressed concerns about the plaintiff's performance in the first month of her employment but began to micromanage her and criticize the quality of her work after the plaintiff disclosed her pregnancy. The plaintiff acknowledged that she had made some mistakes in her work but claimed that Smith never expressed dissatisfaction with the plaintiff's overall performance or communicated that her employment was in jeopardy of being terminated. On May 2, 2013, fewer than five weeks after the plaintiff disclosed her pregnancy, Smith informed the plaintiff that her employment was being terminated for poor performance. Smith did not elaborate on the reasons supporting her decision to terminate the plaintiff's employment or provide the plaintiff with any documents explaining her alleged performance deficiencies.

On September 20, 2013, the plaintiff filed a discrimination complaint with the Commission on Human Rights and Opportunities (commission). On October 21, 2014, after receiving a release of jurisdiction from the commission, the plaintiff commenced the present action, alleging that the defendant unlawfully had terminated her employment on the basis of pregnancy, in violation of General Statutes § 46a-60 (b) (7) (A).[2] The parties agreed to bifurcate the issues of liability and damages at trial. The issue of liability was tried to a jury on December 6 and 7, 2016. Following the plaintiff's case-in-chief, the defendant moved for a directed verdict on the ground that the plaintiff had failed to establish a prima facie case of pregnancy discrimination. The court reserved its decision on the defendant's motion pursuant to Practice Book § 16-37.[3]

On December 9, 2016, the jury returned a verdict in favor of the plaintiff. Thereafter, the defendant filed a posttrial motion for judgment notwithstanding the verdict, claiming that the plaintiff had failed to establish a prima facie case of discrimination because the evidence was insufficient to establish that the termination of the plaintiff's employment occurred under circumstances giving rise to an inference of discrimination and, additionally, that the plaintiff had failed to carry her ultimate burden of establishing that the defendant's reason for terminating her employment was pretextual

and that her dismissal was motivated by unlawful discrimination.[4] In its memorandum of decision denying the defendant's motion, the court concluded that, although the evidence was not overwhelming, the jury reasonably could have inferred from the "relatively sharp" change in Smith's attitude toward the plaintiff and the abrupt commencement of complaints regarding the plaintiff's job performance after she disclosed her pregnancy that the defendant's proffered reason for terminating the plaintiff's employment was pretextual and that the defendant intentionally had discriminated against her on the basis of pregnancy.

On November 1, 2018, the issue of damages was tried to the court. The court awarded the plaintiff $315,187.83 in economic damages, as well as prejudgment and post-judgment interest and attorney's fees. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the defendant claims that the court improperly denied its motion for judgment notwithstanding the verdict because the plaintiff failed to establish (1) a prima facie case of pregnancy discrimination and (2) that the defendant's reason for terminating the plaintiff's employment was a pretext for intentional discrimination.[5]

We begin our discussion of the defendant's claim that it was entitled to judgment as a matter of law by setting forth the standard of review. "Appellate review of a trial court's refusal to render judgment notwithstanding the verdict occurs within carefully defined parameters." (Internal quotation marks omitted.) *Elliott* v. *Larson*, 81 Conn. App. 468, 472, 840 A.2d 59 (2004). "We must consider the evidence, and all inferences that may be drawn from the evidence, in a light most favorable to the party that was successful at trial. . . . This standard of review extends deference to the judgment of the judge and the jury who were present to evaluate witnesses and testimony." (Citation omitted.) *Craine* v. *Trinity College,* 259 Conn. 625, 635–36, 791 A.2d 518 (2002).

"Judgment notwithstanding the verdict should be granted only if we find that the jurors could not reasonably and legally have reached the conclusion that they did reach." (Internal quotation marks omitted.) *Elliott* v. *Larson,* supra, 81 Conn. App. 472–73. "Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation." (Internal quotation marks omitted.) *Bagley* v. *Adel Wiggins Group*, 327 Conn. 89, 102, 171 A.3d 432 (2017). "Whether the evidence presented by the plaintiff was sufficient to withstand a motion for [judgment notwithstanding the verdict] is a question of law, over which

our review is plenary."[6] *Curran* v. *Kroll*, 303 Conn. 845, 855, 37 A.3d 700 (2012).

"Two further fundamental points bear emphasis. First, the plaintiff in a civil matter is not required to prove [her] case beyond a reasonable doubt; a mere preponderance of the evidence is sufficient. Second, the well established standards compelling great deference to the historical function of the jury find their roots in the constitutional right to a trial by jury." (Internal quotation marks omitted.) *Madigan* v. *Housing Authority*, 156 Conn. App. 339, 362, 113 A.3d 1018 (2015).

Having set forth the applicable standard of review, we now turn to the general principles governing a claim of pregnancy discrimination in violation of § 46a-60 (b) (7) (A). Although the language of Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act differ slightly, our Supreme Court has observed that the legislature intended to make our state discrimination laws coextensive with the federal statute. *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989). Thus, Connecticut courts often look to federal employment discrimination law for guidance in enforcing our own antidiscrimination statute. Id.; *Ayantola* v. *Board of Trustees of Technical Colleges*, 116 Conn. App. 531, 536, 976 A.2d 784 (2009).

"The framework this court employs in assessing . . . discrimination claims under Connecticut law was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny." (Internal quotation marks omitted.) *Tomick* v. *United Parcel Service, Inc.*, 157 Conn. App. 312, 325, 115 A.3d 1143 (2015), aff'd, 324 Conn. 470, 153 A.3d 615 (2016). Under the *McDonnell Douglas Corp.* burden shifting analysis, the employee must "first make a prima facie case of discrimination. . . . The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. . . . The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Internal quotation marks omitted.) *Taing* v. *CAMRAC, LLC*, 189 Conn. App. 23, 28, 206 A.3d 194 (2019).

In reviewing a discrimination claim we bear in mind that "the question facing triers of fact in [employment] discrimination cases is both sensitive and difficult . . . . There rarely will be direct evidence of discrimination." (Citation omitted; internal quotation marks omitted.) *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 516, 832 A.2d 660 (2003). The *McDonnell Douglas Corp.* framework "is intended to provide guidance to fact finders who are faced with the difficult task of determin-

ing intent in complicated discrimination cases. It must not, however, cloud the fact that it is the plaintiff's ultimate burden to prove that the defendant intentionally discriminated against her because of her [pregnancy]." *Craine* v. *Trinity College*, supra, 259 Conn. 637; see also *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

A

Prima Facie Case of Discrimination

We first address whether the plaintiff established a prima facie case of pregnancy discrimination. In general, "[i]n order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." (Internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 73, 111 A.3d 453 (2015).

If the plaintiff succeeds in establishing a prima facie case, it creates a rebuttable presumption that the employer intentionally discriminated against the employee. *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); see also *Texas Dept. of Community Affairs* v. *Burdine*, supra, 450 U.S. 254 n.7. Thereafter, the burden shifts to the defendant to rebut the presumption raised by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Center* v. *Hicks*, supra, 506–507.

On appeal, the defendant does not challenge the plaintiff's prima facie case on the grounds that she failed to prove that she was a member of a protected class, was qualified for her position, and suffered an adverse employment action. See footnote 4 of this opinion. Accordingly, only the fourth element of the plaintiff's prima facie case—whether the plaintiff established that the termination of her employment occurred under circumstances giving rise to an inference of discrimination—is at issue in this appeal.

"Circumstances contributing to a permissible inference of discriminatory intent may include the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position . . . or [the employer's] invidious comments about others in the employee's protected group . . . or the more favorable treatment of employees not in the protected group . . . or the sequence of events leading to the plaintiff's discharge . . . or the timing of the discharge . . . ." (Citations omitted.) *Chambers* v. *TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); see also *Martinez* v. *Premier Maintenance,*

*Inc.*, 185 Conn. App. 425, 439–40, 197 A.3d 919 (2018). As our Supreme Court has recognized, however, "[n]othing in *McDonnell Douglas Corp.* . . . limits the type of circumstantial evidence that may be used to establish the fourth prong of the test for a prima facie case of [pregnancy] discrimination." *Craine* v. *Trinity College*, supra, 259 Conn. 640–41.

The plaintiff primarily relies on the sequence of events over the course of her employment with the defendant to establish that her dismissal occurred under circumstances giving rise to an inference of discrimination. Specifically, the plaintiff testified that, in the first few weeks of her employment, Smith was very friendly to her, spent hours working collaboratively with her on projects, and developed a great working relationship with her. Furthermore, prior to the disclosure of her pregnancy, Smith neither informed the plaintiff that she was not meeting Smith's expectations nor otherwise indicated that her performance was deficient. The plaintiff testified, however, that after disclosing her pregnancy to Smith, Smith's attitude toward her abruptly changed and Smith began to micromanage her and criticized her work. Smith subsequently terminated her employment, approximately five weeks after the plaintiff had disclosed that she was pregnant.

The defendant contends that the plaintiff's evidence was insufficient to give rise to an inference that her dismissal was the result of discrimination. We disagree and conclude that there is sufficient evidence in the record from which a rational fact finder could infer that the termination of the plaintiff's employment was motivated by discriminatory bias toward the plaintiff based on her pregnancy.

Evidence of the working environment and the relationship between the plaintiff and Smith prior to, and after, the plaintiff's disclosure of her pregnancy, namely, Smith's (1) sudden micromanagement of the plaintiff, (2) brusque and cold manner toward the plaintiff, (3) abrupt dissatisfaction with the plaintiff's job performance, and (4) discharging of the plaintiff shortly after learning of the plaintiff's pregnancy, was sufficient to create an inference that the defendant unlawfully discriminated against the plaintiff on the basis of pregnancy when it terminated her employment.

Viewing the plaintiff's evidence in its entirety, the jury reasonably could have inferred that a nexus existed between the plaintiff's disclosure of her pregnancy and the defendant's termination of her employment. In the context of a wrongful discharge action, this court previously has held that, for purposes of a prima facie case, a plaintiff may establish an inference of discrimination by demonstrating that the protected activity was followed close in time by an adverse action. See, e.g., *Li* v. *Canberra Industries*, 134 Conn. App. 448, 454–57, 39 A.3d 789 (2012); see also *El Sayed* v. *Hilton Hotels*

*Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (temporal proximity between employee filing complaint and subsequent discharge may give rise to inference sufficient to establish prima facie case of retaliation); *Asmo* v. *Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (two months between supervisor learning plaintiff was pregnant and termination of plaintiff's employment was sufficient to establish nexus for purposes of prima facie case of discrimination).

Because the plaintiff put forth sufficient evidence to establish that the termination of her employment occurred under circumstances giving rise to an inference of discrimination, the plaintiff satisfied her initial burden of establishing a prima facie case of discrimination. The trial court, therefore, properly denied the defendant's motion for judgment notwithstanding the verdict on that ground.

B

Pretext and Intentional Discrimination

We next turn to whether there was sufficient evidence to support the jury's finding that the defendant intentionally discriminated against the plaintiff on the basis of her pregnancy. The defendant claims that the court improperly denied its motion for judgment notwithstanding the verdict because there was no evidentiary basis to support the jury's determination that the defendant's proffered reason for terminating the plaintiff's employment was pretextual or that the defendant intentionally discriminated against the plaintiff.[7] The defendant argues that, even assuming that the plaintiff adduced evidence sufficient to support a finding that the defendant's explanation was pretextual, the plaintiff failed to adduce any concrete evidence, beyond the inferences relied on in her prima facie case, to establish that her dismissal was motivated by intentional discrimination and that the jury, therefore, resorted to impermissible speculation and conjecture in returning its verdict in favor of the plaintiff. The defendant relatedly argues that the plaintiff did not adduce evidence beyond the temporal proximity between her pregnancy disclosure and her dismissal to prove that the defendant's explanation was a pretext for intentional discrimination, which is insufficient as a matter of law to establish a discrimination claim. See *Govori* v. *Goat Fifty, L.L.C.*, 519 Fed. Appx. 732, 734 (2d Cir. 2013). For the following reasons, we conclude that there was sufficient evidence from which the jury reasonably could have found that the defendant discriminated against the plaintiff on the basis of her pregnancy.

We first set forth the relevant legal principles that guide our analysis of this claim. Once a plaintiff has adduced evidence sufficient to establish a prima facie case of discrimination, the burden shifts to the defendant to rebut the presumption raised, by articulating a

legitimate, nondiscriminatory reason for the adverse employment action. *Taing* v. *CAMRAC, LLC*, 189 Conn. App. 23, 28, 206 A.3d 194 (2019). The defendant's "burden is one of production, not persuasion; it can involve no credibility assessment." (Internal quotation marks omitted.) *Feliciano* v. *Autozone, Inc.*, supra, 316 Conn. 74. Although the defendant must produce sufficient evidence to support its nondiscriminatory explanation, it bears emphasizing that the ultimate burden of persuading the fact finder "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." (Internal quotation marks omitted.) *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

If the defendant carries its burden of production, the presumption raised by the plaintiff's prima facie case "drops from the case"; (internal quotation marks omitted) *St. Mary's Honor Center* v. *Hicks*, supra, 509 U.S. 507; and the sole remaining issue becomes "discrimination vel non . . . ." (Citation omitted; internal quotation marks omitted.) *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 143. In other words, the plaintiff must persuade the trier of fact, by a preponderance of the evidence, that the defendant's justification for her dismissal "is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." *Craine* v. *Trinity College*, supra, 259 Conn. 637. "[The plaintiff] may succeed in this either directly by persuading the [jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs* v. *Burdine*, supra, 450 U.S. 256.

Although the presumption created by the prima facie case disappears after the defendant has produced evidence sufficient to establish a nondiscriminatory reason for the adverse employment action, "the plaintiff may rely upon the evidence used in establishing [her] prima facie case to prove the ultimate issue of [pregnancy] discrimination." *Craine* v. *Trinity College*, supra, 259 Conn. 644. Furthermore, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, [n]o additional proof of discrimination is required . . . ." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 706, 900 A.2d 498 (2006), quoting *St. Mary's Honor Center* v. *Hicks*, supra, 509 U.S. 511.

The following additional facts, viewed in the light most favorable to the plaintiff, are relevant to our reso-

lution of the defendant's claim. At trial, the defendant contended that it terminated the plaintiff's employment because of her poor performance. Smith testified that, after she had received feedback from Patel on the plaintiff's first day of work that the plaintiff appeared disinterested and unengaged at orientation, Smith and Patel frequently discussed among themselves Smith's concerns about the plaintiff's performance. Smith began documenting the plaintiff's performance issues when, in Smith's opinion, the plaintiff's performance did not improve following later discussions with the plaintiff about her deficiencies.

The defendant placed into evidence a chart generated by Smith that summarized the plaintiff's performance issues, as well as e-mails that purported to support Smith's observations. Among other things, Smith noted that the plaintiff's performance was deficient in the following areas: communication, knowledge of the defendant's brand and products, organization, attention to detail, being proactive, and adhering to the expected work schedule. Significantly, all of the documents introduced into evidence by the defendant were dated on or after March 29, 2013, the day that the plaintiff disclosed her pregnancy to Smith. Moreover, the plaintiff produced evidence calling into question many of the defendant's claims about her deficient performance.

With respect to the defendant's claims about the plaintiff's schedule, Smith testified that she did not instruct the plaintiff to arrive for work by 8:30 a.m. Instead, she testified that she told the plaintiff that she generally arrived to work between 8 and 8:30 a.m. and that she therefore had expected that the plaintiff would arrive at approximately the same time. The plaintiff routinely arrived at approximately 9 a.m. until Smith e-mailed the plaintiff on April 5, 2013, to inform her that she was expected to attend daily meetings with the digital team at 8:30 a.m. The plaintiff regularly met with Smith in the first few weeks of her employment, often for many hours at a time, and it was only after disclosing her pregnancy that Smith told her that she was expected to attend the digital team's morning meetings and that she must arrive to work by 8:30 a.m. The plaintiff had assumed that her hours were that of a "regular job, nine to five," and was never told otherwise until after she informed Smith about her pregnancy. The plaintiff started attending the digital team's daily morning meetings after receiving Smith's e-mail about her expected work hours.

With respect to the defendant's claim concerning the plaintiff's communication issues, Smith noted that the plaintiff did not effectively communicate with her when she had childcare obligations requiring her to arrive late or leave early. In her April 5, 2013 e-mail to the plaintiff, Smith asked the plaintiff for the first time to communicate her schedule. The plaintiff subsequently

provided Smith with her schedule for the following two weeks and adhered to that schedule. Smith testified that she did not receive any further communications from the plaintiff about any scheduling conflicts. Smith, however, could not say definitively whether the plaintiff continued to have childcare related scheduling issues or whether any such issues were resolved, which, if resolved, would obviate any need for the plaintiff to keep Smith apprised of any such issues.

Smith also documented the plaintiff's lack of organizational skills, proactivity, and attention to detail. Specifically, she testified that, on March 29, 2013, the plaintiff hastily responded to a request for marketing materials from another department within the company and, in so doing, did not send all of the marketing images or file sizes requested. On April 22, 2013, Smith also received feedback from the director of the digital team, Brad Stamulis, that the plaintiff had not been proactive in providing his team with information about when they could expect certain marketing materials. The plaintiff testified, however, that she was unable to provide that information because, after e-mailing Smith to express that she urgently needed Smith to respond about the outstanding materials, Smith had failed to reply.

The defendant also produced evidence that, on April 10, 2013, the plaintiff gave approval to an external agency to publish an advertisement with the wrong hyperlink. Smith testified that, had Smith not recognized and rectified the advertisement the plaintiff had approved, it would have directed consumers to a product that was unavailable in the market segment where the advertisement was to be published. According to Smith, such an error potentially could have exposed the defendant to legal action. The plaintiff acknowledged that she made a " 'huge mistake,' " but also testified that the error was partly due to a problem with the notification feature in the defendant's project management system that had caused her to overlook a communication from someone seeking to confirm that the hyperlink was correct.

With respect to the plaintiff's knowledge of the defendant's brand and products, Smith testified that, on April 12, 2013, the plaintiff provided incorrect information to an external marketing agency, which demonstrated a fundamental lack of understanding about the defendant's rate plans. The plaintiff testified, however, that the defendant did not provide her with official training on the defendant's pricing policies until April 18, 2013.

In sum, Smith asserted that the plaintiff was in probationary status throughout her employment and that, per the defendant's policy, Smith was not required to notify the plaintiff that her performance was deficient or warn her that she was in jeopardy of her employment being terminated. Smith testified that, although she did not document the exact dates or details regarding the dis-

cussions she had with the plaintiff and did not provide the plaintiff with any written documentation of her concerns with the plaintiff's performance, she frequently had talked with the plaintiff about her performance issues over the course of her employment and had fairly apprised the plaintiff of her deficiencies. Additionally, Smith and Patel testified that they reviewed the chart that Smith generated and made the decision to terminate the plaintiff's employment because her performance had not improved. Smith and Patel further testified that the plaintiff's employment was terminated because she had made basic errors and did not satisfactorily meet the expectations of the senior manager position.

The plaintiff did not dispute that she had made some mistakes during her employment with the defendant. The plaintiff, however, testified that Smith never had expressed dissatisfaction with her performance or otherwise indicated that she was not meeting Smith's expectations. Rather, Smith told the plaintiff that she understood that the plaintiff was still learning and occasionally would make mistakes. According to the plaintiff, it was not until she disclosed her pregnancy that Smith began to critique and micromanage her work on every project that she was assigned. The plaintiff testified that her dismissal came as a "complete shock" and that she never had been shown the documents regarding her performance deficiencies until after she filed a complaint with the commission.

Having set forth the relevant facts, we first review whether the plaintiff adduced evidence from which the jury could have found that the defendant's nondiscriminatory reason for terminating the plaintiff's employment was pretextual. "A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable [fact finder] could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (Internal quotation marks omitted.) *Stubbs* v. *ICare Management, LLC*, 198 Conn. App. 511, 523, 233 A.3d 1170 (2020).

Having reviewed the record, we conclude that there was sufficient evidence for the jury to have concluded that the defendant's stated reason for the plaintiff's dismissal was pretextual. To wit, the plaintiff established that Smith did not begin documenting her allegedly deficient performance until after she informed Smith that she was pregnant. Although Smith testified that she had numerous conversations with the plaintiff about her performance before the plaintiff disclosed that she was pregnant, none of the documents admitted into evidence supports that claim. Moreover, the plaintiff testified that, prior to disclosing her pregnancy,

Smith never expressed dissatisfaction with her performance and that Smith began to micromanage and criticize her work only after learning that the plaintiff was pregnant. As the trial court observed in its memorandum of decision denying the defendant's motion for judgment notwithstanding the verdict, the jury was not required to assume that the rather abrupt identification of performance problems, as evidenced by the defendant's documents and the plaintiff's testimony, was a mere coincidence. The jury reasonably could infer from the timing of Smith's marked dissatisfaction with the plaintiff's performance, which coincided with the plaintiff's disclosure of her pregnancy, that the termination of the plaintiff's employment was more likely motivated by discriminatory bias than by her alleged performance deficiencies.

The defendant contends that its uncontroverted proof of a performance issue identified on the same day the plaintiff disclosed her pregnancy, by someone without knowledge of the plaintiff's pregnancy, contradicts any inference that the defendant's nondiscriminatory reason for terminating her employment was pretextual. Specifically, the defendant asserts that the March 29, 2013 e-mail indicating that the plaintiff did not provide all of the marketing materials requested by another department within the company conflicts with the plaintiff's claim that she did not receive any feedback about her performance until after she disclosed her pregnancy and, consequently, that the plaintiff's evidence was insufficient to prove that the defendant's justification for terminating her employment was false. Evidence, however, is not insufficient simply because it is conflicting or inconsistent. *State* v. *Douglas F.*, 145 Conn. App. 238, 244, 73 A.3d 915, cert. denied, 310 Conn. 955, 81 A.3d 1181 (2013). Moreover, it is well established that "[i]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *Cusano* v. *Lajoie*, 178 Conn. App. 605, 609, 176 A.3d 1228 (2017). Accordingly, the jury reasonably could have determined that the March 29, 2013 e-mail was of little to no consequence, especially when juxtaposed against the considerable evidence supporting the plaintiff's contention that her pregnancy disclosure marked a dramatic shift in the work environment.

There was also evidence that, although not directly refuting the alleged performance issues, may have nevertheless persuaded the jury that the defendant's nondiscriminatory justification was not the real reason underlying the plaintiff's dismissal. The plaintiff's evidence, if believed, cast doubt on some of the defendant's claims about her performance issues. With respect to the plaintiff's failure to adhere to the required work schedule, for example, the plaintiff testified that she was never informed that she was to report to work at

8:30 a.m. prior to disclosing her pregnancy. The plaintiff's testimony that she and Smith spent many hours collaborating in the first few weeks of the plaintiff's employment and, according to the plaintiff, Smith never discussed with the plaintiff that she was reporting late to work until after learning the plaintiff was pregnant, supports a reasonable inference that the plaintiff's timeliness was not a legitimate concern. See *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 266 Conn. 513–14 (there is distinction between fact finder second-guessing employer's business judgment, which would be improper, and fact finder concluding that employer's justifications are not credible). Although Smith disputed the plaintiff's account, the jury was not required to accept Smith's testimony. See *State* v. *Brown*, 198 Conn. App. 630, 637, 233 A.3d 1258, cert. denied, 335 Conn. 942, 237 A.3d 730 (2020). The plaintiff also testified that Stamulis' feedback about her lack of proactivity at a morning meeting resulted from Smith's failure to respond to the plaintiff's questions about certain marketing materials. Additionally, Smith's own testimony appeared to undermine her assertion that the plaintiff failed to keep her apprised of scheduling conflicts. Smith could not state definitively whether the plaintiff's childcare obligations had been resolved, which would have made it unnecessary to keep Smith apprised of any such conflicts.

We conclude that the evidence at trial was sufficient for a rational jury to reject the defendant's proffered explanation and find that the plaintiff's dismissal was actually motivated by discrimination. The jury reasonably could have found that, prior to the plaintiff's disclosure of her pregnancy to Smith, the plaintiff and Smith often worked collaboratively for many hours and had developed a good relationship; Smith was cordial when interacting with the plaintiff; and Smith never indicated to the plaintiff that she was not meeting expectations or criticized the plaintiff's work. Within a few days of disclosing her pregnancy to Smith and informing Patel, who met regularly with Smith to discuss the plaintiff's alleged performance issues, that she would almost certainly require an extended leave of absence because of potential pregnancy complications, Smith began to treat the plaintiff differently. After informing Smith that she was pregnant, Smith was curt and unfriendly toward the plaintiff, no longer invited the plaintiff into her office to collaborate on projects, micromanaged the plaintiff, became critical of the plaintiff's work performance and terminated the plaintiff's employment fewer than five weeks later. On the basis of this evidence, the jury reasonably could have found that the timing of Smith's abrupt dissatisfaction with the plaintiff's performance was suspicious and that there was a nexus between the plaintiff's pregnancy and the termination of her employment. This inference is further buttressed by the fact that Smith extensively documented the plaintiff's

alleged performance deficiencies only after the plaintiff disclosed her pregnancy.

Although there may well be other reasonable inferences that can be drawn from the plaintiff's evidence, we do not agree that the jury must have resorted to speculation and conjecture in reaching its verdict. As our Supreme Court has observed, "[p]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Internal quotation marks omitted.) *Curran* v. *Kroll*, supra, 303 Conn. 857. We find these principles particularly compelling in the context of a discrimination claim where a plaintiff is often constrained to rely on circumstantial evidence to prove intent. See, e.g., *Chambers* v. *TRM Copy Centers Corp.*, supra, 43 F.3d 37 ("[e]mployers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law" (internal quotation marks omitted)).

At oral argument before this court, the defendant contended that, assuming, arguendo, there was sufficient evidence to establish that the defendant's proffered justification was pretextual, pursuant to *Craine* v. *Trinity College*, supra, 259 Conn. 625, and *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 43 A.3d 69 (2012), the plaintiff was also required to adduce additional evidence beyond the inferences relied on in support of her prima facie case in order to prevail. We are not persuaded by the defendant's reading of *Craine* or *Perez-Dickson*. Neither of those decisions stands for the broad proposition that, if a plaintiff successfully rebuts the defendant's nondiscriminatory reason for the adverse employment action, a plaintiff must produce *additional* evidence of discriminatory intent beyond that which may be inferred from the plaintiff's prima facie case in order to prevail in an employment discrimination action. Rather, our Supreme Court's conclusions in *Craine* and in *Perez-Dickson* turned on the specific facts and circumstances of those cases.

Furthermore, in *Craine*, the court was guided by the United States Supreme Court's holding in *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 148. In *Reeves*, the court held that a plaintiff's prima facie case, combined with sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for the adverse employment action, *permits* the trier of fact to conclude that the employer unlawfully discriminated. Id.; see also *Craine* v. *Trinity College*, supra, 259 Conn. 645. Stated differently, on establishing that the employer's asserted reason for its

action is pretextual, the plaintiff is not required to put forth additional evidence of discrimination to prevail.[8] The defendant has not directed us to any legal authority that would make *Reeves* inapplicable to the present appeal. The jury, therefore, on rejecting the defendant's reason, was permitted to infer the ultimate fact of intentional discrimination on the basis of the inferences reasonably drawn from the evidence rebutting the defendant's explanation and establishing the plaintiff's prima facie case.

The defendant additionally claims that the plaintiff relied solely on evidence of "temporal proximity" to prove her discrimination claim, without bringing forth any additional evidence that the defendant's proffered legitimate reason for its action was pretextual, which it argues is insufficient as matter of law. The defendant cites *Govori* v. *Goat Fifty, L.L.C.*, supra, 519 Fed. Appx. 734, for the proposition that, although proximity between protected activity and an adverse employment action may be sufficient to establish a prima facie case of discrimination, such evidence is, by itself, insufficient to establish that an employer's nondiscriminatory reasons for dismissing an employee are pretextual.

In contending that the plaintiff relied solely on evidence of temporal proximity to establish her pregnancy discrimination claim, the defendant mistakenly conflates the concept of temporal proximity evidence with evidence establishing a sequence of events that transpired following the plaintiff's disclosure of her protected status. Evidence contrasting the plaintiff's working environment prior to and after she disclosed her pregnancy, however, is more than evidence merely establishing temporal proximity between the plaintiff's disclosure and her subsequent dismissal. Whereas temporal proximity between two events alone may be sufficient to establish a prima facie case, the broader sequence of events leading up to and including an adverse employment decision provides important context that may establish whether there exists a nexus between those two events. In other words, the close proximity between when Smith learned about the plaintiff's pregnancy and the plaintiff's subsequent dismissal raises a permissible inference that there exists a relationship between those events. The stark contrast between the working environment prior to and after the plaintiff disclosed her pregnancy constitutes evidence beyond mere "temporal proximity" and supports the inference of unlawful discrimination.

Although, as the trial court noted, the plaintiff's evidence was not particularly overwhelming, viewed in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence from which the jury could have inferred that the defendant's nondiscriminatory reason for terminating the plaintiff's employment was pretextual and that the plaintiff's dis-

missal was actually motivated by intentional discrimination. In so concluding, we are mindful of the well recognized principles that compel our deference to the historical function of the jury. See, e.g., *Jackson* v. *Water Pollution Control Authority*, supra, 278 Conn. 704 ("[i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it" (internal quotation marks omitted)); *Elliott* v. *Larson*, supra, 81 Conn. App. 475 ("[w]e test the propriety of a motion for a judgment notwithstanding the verdict in accordance with the principle that we give the evidence at trial the most favorable reasonable construction in support of the verdict to which it is entitled" (internal quotation marks omitted)).

Because "it is apparent that there was some evidence upon which the jury might reasonably [have] reach[ed] [its] conclusion"; (internal quotation marks omitted) *Salaman* v. *Waterbury*, 246 Conn. 298, 304, 717 A.2d 161 (1998); the trial court properly denied the defendant's motion for judgment notwithstanding the verdict.

## II

The defendant's final claim is that the court miscalculated the plaintiff's damages because it improperly failed to exclude from the plaintiff's award ten months of back pay for which the plaintiff did not produce documents to prove her efforts to obtain employment. The defendant's claim is predicated on its belief that the court based its decision to exclude seventeen months of back pay entirely on the plaintiff's failure to produce documents supporting her request for damages for those months. The defendant therefore argues that the court similarly should not have awarded back pay for any month in which the plaintiff failed to produce documentary evidence that she attempted to mitigate her damages by actively seeking employment. We disagree with the defendant's interpretation of the court's decision and conclude that the court's assessment of damages was not clearly erroneous.

Before addressing the merits of the defendant's claim, we set forth the relevant legal principles and standard of review that guide our analysis. It is axiomatic that a plaintiff has a duty to make reasonable efforts to mitigate damages. *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 223, 837 A.2d 759 (2004). An employer seeking to reduce or avoid a back pay award "bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate." (Internal quotation marks omitted.) *Gaither* v. *Stop & Shop Supermarket Co., LLC*, 84 F. Supp. 3d 113, 123 (D. Conn. 2015); see also *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 229, 676 A.2d 844 (1996). The employer must therefore demonstrate that "suitable work existed, and that the employee did not make reasonable efforts to obtain it." *Clarke* v. *Frank*, 960 F.2d 1146, 1152 (2d Cir. 1992).

Whether a plaintiff made a reasonable effort to mitigate her damages under the circumstances of a particular case is a question of fact. *Dunleavey* v. *Paris Ceramics USA, Inc.*, 97 Conn. App. 579, 582, 905 A.2d 703 (2006). "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *Hess Corp.*, 176 Conn. App. 461, 484, 170 A.3d 682 (2017). "[W]e will upset a factual determination of the trial court only if it is clearly erroneous. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Dunleavey* v. *Paris Ceramics USA, Inc.*, supra, 583.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. Following her dismissal, the plaintiff was unable to obtain employment until September, 2017. During the damages portion of the trial, which was tried to the court, the plaintiff sought approximately fifty-two months of back pay.[9] For twenty-seven of the approximately fifty-two months that she was unemployed, the plaintiff did not produce documents supporting her claim that she made efforts to mitigate her damages. The plaintiff worked with several recruiters, utilized employment websites, regularly spoke with acquaintances about potential opportunities, and networked with former coworkers approximately once a week to learn of available jobs. She failed, however, to maintain a complete set of records of her search efforts. Instead, she attempted to document her efforts to find employment by combining information from her e-mails, networking websites, employer websites, the contact list on her cell phone, and memory. The plaintiff also acknowledged that she inadvertently may have failed to produce some documents that would further demonstrate her mitigation efforts due to the volume of e-mails that were in her inbox.[10]

A vocational expert, Rona Wexler, testified on behalf of the defendant. Wexler opined that the plaintiff's search for employment was ineffective, inconsistent, and evidenced minimal effort. According to Wexler, the marketing industry was still recovering from the recession in 2013 when the plaintiff was seeking employment, but the demand for employees with digital marketing experience increased in the following few years. She was unaware of how many opportunities

actually existed in the geographical area where the plaintiff sought employment during the time the plaintiff was unemployed.

In its memorandum of decision, the court found that the plaintiff had failed to record and preserve documents relating to her mitigation efforts, which it weighed in its determination of damages. As to Wexler's testimony, the court found that it lacked specificity with regard to the number and types of comparable positions that were available in the marketing industry when the plaintiff was searching for employment, thus diminishing the persuasiveness of Wexler's conclusions about the plaintiff's search efforts. Because the plaintiff had provided no documents and "no satisfactory explanation" regarding the absence of tangible proof concerning her search during significant periods of time, the court found that the defendant had proven that the plaintiff failed to satisfy her duty to mitigate damages during certain months when she was unemployed. Specifically, the court found that the plaintiff did not actively participate in the job market from May to December, 2013, when she was on bed rest and postpartum. The court also found that there was a pattern of minimal to no activity during the summer months in 2014, 2015, and 2016. Accordingly, the court awarded the plaintiff approximately thirty-five months of back pay, not the fifty-two months of back pay that she was seeking.[11]

On appeal, the defendant claims that the court improperly awarded the plaintiff ten months of back pay because the plaintiff did not provide any tangible proof of her efforts to obtain employment during those months. The defendant argues that the trial court's decision awarding the plaintiff back pay for those ten months is inconsistent with, and contrary to, the court's decision to exclude seventeen months of back pay based on the plaintiff's failure to produce physical evidence supporting her mitigation efforts during those months. The defendant mischaracterizes the court's findings.

The court's memorandum of decision makes clear that it did not determine that the plaintiff had failed to mitigate her damages for a total of seventeen months on the basis of the plaintiff's failure to produce physical evidence alone. The court took into account the plaintiff's failure to adequately document or preserve evidence of her efforts with respect to her job search, stating that it goes "to the weight of the evidence presented and at least in some measure to the credibility of the plaintiff." Accordingly, although the plaintiff testified that she consistently searched for employment, the court concluded, on the basis of all of the evidence it heard concerning her damages, not just the documentary evidence or lack thereof, that the plaintiff did not make a reasonable effort to mitigate her damages for

seventeen months while she was unemployed.

We therefore conclude that the court's decision to award back pay for some months in which the plaintiff did not corroborate her mitigation efforts with tangible proof was not clearly erroneous. It was for the court, as the finder of fact, to weigh the plaintiff's testimony with respect to her overall efforts to obtain employment against the lack of tangible evidence of those efforts. See *Llera* v. *Commissioner of Correction*, 156 Conn. App. 421, 440, 114 A.3d 178, cert. denied, 317 Conn. 907, 114 A.3d 1222 (2015). Moreover, it was the defendant's burden to prove that suitable work existed and that the plaintiff did not exercise reasonable diligence to obtain employment. The court found that Wexler's testimony on each of those points was entitled to little weight.

On the basis of our review of the record, we conclude that the court's finding that the defendant had proven that the plaintiff had failed to mitigate her damages for only seventeen of the fifty-two months that she was unemployed was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also asserted a claim of negligent infliction of emotional distress, which was resolved on a motion for summary judgment rendered in favor of the defendant. The plaintiff does not challenge that ruling on appeal.

[2] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (7) [f]or an employer, by the employer or the employer's agent: (A) [t]o terminate a woman's employment because of her pregnancy . . . ."

[3] Practice Book § 16-37 provides in relevant part: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case-in-chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . ."

[4] The defendant also claimed that it was entitled to judgment notwithstanding the verdict because the plaintiff failed to prove that she was qualified for her position, as is required to establish a prima facie case of employment discrimination. But see *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 514 n.34, 43 A.3d 69 (2012) (courts require showing that plaintiff is qualified for position only when it is germane to issues involved). Additionally, the defendant moved to set aside the verdict on the ground that, before the court instructed the jury to reconcile the discrepancy, the jury's initial answer to an interrogatory was inconsistent with its verdict and, thus, demonstrated that the jury was confused, warranting a new trial. The trial court rejected both claims, and the defendant does not appeal from those rulings.

[5] In its principal brief, the defendant specifically claimed that the court improperly denied its motion for a directed verdict on the ground that the plaintiff failed to establish a prima facie case of discrimination. As we previously noted in this opinion, the court deferred its decision on the defendant's motion, which, pursuant to our rules of practice, was "the equivalent of a denial of the motion for purposes of subsequent proceedings . . . ." *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 72, 214 A.3d 345 (2019). The defendant renewed its motion for a directed verdict in its posttrial motion for judgment notwithstanding the verdict, and, accordingly, the court's ruling on the posttrial motion became the controlling disposition for purposes of this appeal. See id., 73.

[6] Relying on various appellate cases, the parties assert that the proper standard of review of the defendant's claim is the abuse of discretion standard. As this court recently has explained, however, although our opinions sometimes have referred to the abuse of discretion standard in the context of reviewing a trial court's decision regarding a motion for judgment notwithstanding the verdict, where a party challenges a trial court's ruling on a

motion for judgment notwithstanding the verdict on the basis of insufficient evidence, our review is plenary. *Cockayne* v. *Bristol Hospital, Inc.*, 210 Conn. App. 450, 457–59,     A.3d     (2022), petition for cert. filed (Conn. February 28, 2022) (No. 210338); see also *Pellet* v. *Keller Williams Realty Corp.*, 177 Conn. App. 42, 50 n.9, 172 A.3d 283 (2017) (standard of review governing claims that trial court improperly granted motion for directed verdict became conflated with standard of review governing challenges to trial court's granting or denying motion to set aside verdict, but plenary review applies when party moves for directed verdict on basis of insufficient evidence).

[7] In its principal brief, the defendant asserts that the "trial court erred in denying [the defendant's] motion to set aside the jury verdict on liability" and "*should have . . . entered judgment in favor of* [*the defendant*]" and that the proper standard of review on appeal of the trial court's denial of a motion to set aside the verdict is abuse of discretion. (Emphasis added.) We agree that the appropriate standard of appellate review with respect to a trial court's ruling on a motion to set aside a verdict is abuse of discretion. See *Madigan* v. *Housing Authority*, supra, 156 Conn. App. 348. We interpret the defendant's claim on appeal, however, as seeking review of the court's denial of its motion for judgment notwithstanding the verdict on the basis of insufficient evidence, which we review de novo.

[8] The United States Supreme Court, however, also noted that the plaintiff would not be entitled to judgment as a matter of law on putting forth sufficient evidence to prove the defendant's explanation was pretextual, stating: "This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." (Emphasis in original.) *Reeves* v. *Sanderson Plumbing Products, Inc.*, supra, 530 U.S. 148; see also *St. Mary's Honor Center* v. *Hicks*, supra, 509 U.S. 511 (fact finder's rejection of employer's legitimate nondiscriminatory reason for its actions does not *compel* judgment for plaintiff).

[9] The court calculated the plaintiff's presumptive damages, net of unemployment compensation she had received, as $468,279.07.

[10] There were approximately 40,000 e-mails in the plaintiff's inbox. She had conducted a keyword search to find documents to comply with the defendant's request for production.

[11] The court found that the plaintiff was not entitled to back pay for eight months in 2013 and three summer months in years 2014, 2015, and 2016.